# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

MITCHELL PAUL COOK

VERSES

LOUISIANA WORKFORCE, L.L.C.,
ET AL.

CIVIL ACTION

No.: 16-00587-BAJ-RLB

## RULING AND ORDER

Before the Court are a **Motion to Dismiss (Doc. 5)** and a **Motion for Summary Judgment (Doc. 6)** filed by Defendants Warden Robert Tanner, Warden Sandy McCain, Secretary James M. LeBlanc, and the Louisiana Department of Public Safety and Corrections ("LDPSC").[1] Plaintiff opposes the motions. (Doc. 15; Doc. 16). For the reasons that follow, the Motions are **GRANTED**.

## I.    BACKGROUND

Plaintiff is an inmate currently incarcerated at Rayburn Correctional Center ("RCC") in Angie, Louisiana, where he has been housed since August 10, 2015. (Doc. 6-4 at p. 4). Warden McCain is the warden at RCC. (Doc. 1-1 at ¶ 1). Previously, Plaintiff was housed at Elayn Hunt Correctional Center ("EHCC") from May 26, 2015 to August 10, 2015, and at work release facilities from June 23, 2014 to May 26, 2015. (Doc. 6-4 at p. 4). Warden Tanner is the warden at EHCC. (Doc. 1-1 at ¶ 1). At all times relevant to this lawsuit, Plaintiff was under the supervision of the LDPSC. (Doc. 6-4 at pp. 2–4). While on work release, Plaintiff was employed as a "hopper" on

---

[1] The Motions to do not include Defendants Louisiana Workforce, L.L.C., a private entity, and Johnny Smith, who was not employed by the State during the events giving rise to this litigation. (Doc. 6-2 at p. 1 n.1).

a Garbage truck in Lake Charles, Louisiana. (Doc. 1-1 at ¶ 6). Plaintiff suffered a severe injury to his right eye while performing his work-release duties on May 11, 2015. (*Id.* at ¶ 7).

Plaintiff's medical records state that the injury resulted in a retinal tear. (Doc. 11-1 at pp. 4–5). His EHCC intake form indicates that he had eye surgery scheduled for May 27, 2015, but that surgery was canceled because he was transferred to EHCC on May 26, 2015. (*Id.* at p. 20). During Plaintiff's intake at EHCC, he had eye drop prescriptions filled and he was placed on "no duty" status with a restriction on lifting objects over ten pounds. (*Id.* at pp. 6–7). On May 27, 2015, EHCC sent an urgent referral for eye surgery to LDPSC headquarters, requesting an appointment for Plaintiff at University Medical Center New Orleans ("UMC") as soon as possible. (*Id.* at p. 20).

Plaintiff was taken to the eye clinic at the Interim Louisiana Hospital ("ILH") on June 1, 2015.[2] (*Id.* at p. 21). Plaintiff's medical records state that he was told to stay on bedrest, and the form sent back to EHCC indicated that he had a retinal detachment and that he "must see retina surgeon as soon as possible!" (*Id.* at pp. 27–28). Plaintiff returned to the clinic on June 4, 2015. (Doc. 11-2 at p. 3). On June 5, 2015, surgery was requested for June 11, 2015, and approved. (Doc. 11-2 at p. 11; Doc. 7-3 at p. 6).

---

[2] ILH replaced Charity Hospital in New Orleans following Hurricane Katrina. UMC subsequently replaced ILH. Rebecca Catalanello, *University Medical Center Opens to First Patients*, Nola.com (Aug. 1, 2015, 4:03 PM), http://www.nola.com/health/index.ssf/2015/08/university_medical_center_rece.html.

While Plaintiff was undergoing pre-operation testing at EHCC on June 5, 2015, an EKG[3] revealed that Plaintiff had sinus bradycardia,[4] with a heart rate of 60 beats per minutes that sometimes dipped as low as 38 beats per minute. (Doc. 11-2 at p. 23). The physician requested an urgent cardiology consultation. (*Id.*). As a result, the surgery that had been scheduled for June 11, 2015, was cancelled. (*Id.* at p. 24). On July 1, 2015, a follow-up appointment was scheduled for Plaintiff with the cardiology clinic. (Doc. 7-3 at p. 8). The cardiology consultation was performed by telemedicine on July 23, 2015. (Doc. 11-3 at p. 4). Plaintiff was diagnosed with asymptomatic bradycardia, and the cardiologist cleared Plaintiff for eye surgery. (*Id.* at p. 5). A request to reschedule the eye surgery was received by LDPSC headquarters on July, 29, 2015. (Doc. 7-3 at p. 10).

On August 10, 2015, Plaintiff was transferred to RCC. (Doc. 6-4 at p. 4). RCC's intake form indicated that Plaintiff had a retinal detachment, and the form had a notation to check on the status of Plaintiff's eye surgery. (Doc. 11-3 at p. 21). LDPSC subsequently consulted with the hospital. (Doc. 7-3 at p. 10). ILH indicated that Plaintiff needed to be seen back at the eye clinic prior to surgery. (*Id.*). On August 25, 2015, RCC requested an urgent eye clinic appointment. (*Id.* at p. 12). On August 28, 2015, an appointment was made for September 18, 2015. (*Id.* at p. 13). Plaintiff was transported to the clinic on September 18, 2015, and then had a follow-up

---

[3] An EKG, or electrocardiogram, can show rhythm disturbances in the heart. J. Stanley McQuade, 2 Medical Information System for Lawyers §§ 7:11, 170 (2d ed.).

[4] Sinus bradycardia is a slow heart rate with a normal EKG complex. J. Stanley McQuade, 2 Medical Information System for Lawyers § 7:167 (2d ed.).

appointment scheduled for November 4, 2015. (*Id.* at p. 14). That appointment was rescheduled to November 18, 2015, and Plaintiff attended the appointment on that date. (Doc. 7-3 at p. 14; Doc. 11-5 at p. 12). On November 19, 2015, surgery was scheduled for December 3, 2015. (Doc. 7-3 at p. 16).

Plaintiff was brought to UMC for surgery on December 3, 2015; however, his surgery was cancelled. (*Id.*). His medical records indicate that the surgery was cancelled because Plaintiff had severely elevated blood pressure. (Doc. 7-3 at p. 16; Doc. 11-5 at p. 25). Plaintiff was prescribed medication for his high blood pressure, and he was cleared for surgery on December 14, 2015. (Doc. 7-3 at p. 16; Doc. 11-6 at p. 3). LDPSC notified the hospital to reschedule the surgery on January 11, 2016. (Doc. 7-3 at p. 17). The surgery was eventually scheduled for March 10, 2016. (*Id.*). Plaintiff's surgery was completed on that date. (Doc. 11-8 at p. 13). Plaintiff received follow-up visits to UMC on March 11 and 16, 2016. (*Id.* at pp. 3, 10). By the time surgery occurred, however, Plaintiff's loss of vision in his right eye was permanent. (Doc. 1-1 at ¶ 9).

Plaintiff brings this lawsuit alleging violations under 42 U.S.C. § 1983, the Eighth and Fourteenth Amendments, and various Louisiana laws. (Doc. 1-1 at pp. 9–14).

## II. DISCUSSION

### A. Motion to Dismiss

Defendants seek dismissal of all claims against LDPC and the claims against Warden Tanner, Warden McCain, and Secretary Leblanc in their official capacities

based on sovereign immunity. (Doc. 5-1 at p. 3). They further allege that Plaintiff failed to state a claim on the following causes of action: (1) failure to train and supervise, (2) deficient and unconstitutional policies and practices, (3) state-law vicarious liability, and (4) state-law medical malpractice claims.[5] (Doc. 5-1 at pp. 3–6).

## 1. Legal Standard

When reviewing a motion to dismiss, the Court must "accept[] all well-pleaded facts as true and view[] those facts in the light most favorable to the plaintiff."[6] *Hines v. Alldredge*, 783 F.3d 197, 200–01 (5th Cir. 2015) (quoting *True v. Robles*, 571 F.3d 412, 417 (5th Cir. 2009)). Even so, a complaint must be "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Although the complaint need not set out "detailed factual allegations," it must set forth something "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

---

[5] The Court will address all of Plaintiff's state-law claims together. *See Infra* II.B.5.

[6] Plaintiff is represented by counsel; thus, his pleadings are not afforded the liberal construction given to parties proceeding pro se. *See Beasley v. McCotter*, 798 F.2d 116, 118 (5th Cir. 1986).

## 2. Sovereign Immunity[7]

Defendants assert that sovereign immunity bars all claims against Warden Tanner, Warden McCain, and Secretary Leblanc acting in their official capacities, as well as all claims against LDPSC. (Doc. 5-1 at p. 3). Plaintiff does not make any responsive argument. (*See* Doc. 15 at pp. 2–5) (noting Defendants' sovereign immunity argument, but then discussing qualified immunity).

The Eleventh Amendment bars federal suits against states or their agencies without the states' consent. *See Seminole Tribe v. Florida,* 517 U.S. 44, 53–54 (1996); *Cozzo v. Tangipahoa Parish Council—President Gov't,* 279 F.3d 273, 280 (5th Cir. 2002). The United States Court of Appeals for the Fifth Circuit has noted that "[b]y statute, Louisiana has refused any such waiver of its Eleventh Amendment sovereign immunity regarding suits in federal courts." *Cozzo,* 279 F.3d at 281 (citing La. Rev. Stat. ann. § 13:5106(A)). A suit against a government official in his official capacity is the equivalent of filing suit against the government agency of which the official is an agent. *Burge v. Parish of Saint Tammany,* 187 F.3d 452, 466 (5th Cir. 2008). Moreover, 42 U.S.C. § 1983 does not abrogate a state's sovereign immunity. *Cozzo,* 279 F.3d at 281 (citing *Quern v. Jordan,* 440 U.S. 332, 345 (1979)).

LDPSC is a state agency. *See Champagne v. Jefferson Parish Sheriff's Office,* 188 F.3d 312, 313–14 (5th Cir. 1999) (per curiam) (holding that LDPSC is an arm of the state). Warden Tanner, Warden McCain, and Secretary LeBlanc are all

---

[7] A party's claim of sovereign immunity is considered under Federal Rule of Civil Procedure 12(b)(1), lack of jurisdiction. *See e.g., Johnson v. Prairie View A & M Univ.,* 587 F. App'x 213, 214 (5th Cir. 2014) (unpublished) (per curiam).

employees of LDPSC. Louisiana has not waived its sovereign immunity. La. Rev. Stat. ann. § 13:5106(A). Accordingly, Plaintiff's claims against LDPSC and his claims against Warden Tanner, Warden McCain, and Secretary LeBlanc in their official capacities are DISMISSED.

### 3. Failure to Train or Supervise and Unconstitutional Policies and Practices

Defendants seeks dismissal of Plaintiff's 42 U.S.C. § 1983 claims for failure to train or supervise and for unconstitutional policies and practices. They assert that the claims should be dismissed because Plaintiff (1) fails to identify the unconstitutional policies or practices, (2) fails to describe how employees were inadequately trained or supervised, and (3) fails to describe how each of the Defendants were involved in the alleged violations. (Doc. 5-1 at pp. 3–5).

Section 1983 holds a supervisory official liable only to the extent that "(1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury." *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 435 (5th Cir. 2008). A policy is normally an official statement, ordinance, or regulation, but in certain circumstances a persistent, widespread practice that is so commonplace as to constitute a custom can also be treated as policy. *See Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001). In the context of an alleged failure to provide adequate medical care, "the existence of a constitutionally deficient policy cannot be inferred from a single wrongful act." *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987). Plaintiff should show either that "the jail's treatment system had . . . failed to

deliver necessary and appropriate medical care" to other inmates or that the supervisor was deliberately indifferent to the fact "that the policy would expose prisoners to substantial risk of significantly unmet serious medical needs." *Id.* Deliberate indifference is a stringent standard that requires Plaintiff to establish (1) that the officer was aware of facts from which a substantial risk of serious harm could have been inferred and (2) that the officer actually drew the inference. *Ball v. LeBlanc*, 792 F.3d 584, 594 (5th Cir. 2015).

When alleging a failure to train or supervise, Plaintiff "must show that '(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference.'" *Gates*, 537 F.3d at 435 (quoting *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005)). In all but the most exceptional of circumstances, a failure-to-train claim requires a pattern of similar occurrences. *See Connick v. Thompson*, 563 U.S. 51, 62 (2011).

The Court finds that Plaintiff has not adequately pleaded an unconstitutional policies or practices claim. Plaintiff's alleged policy or practice is that "of failing to provide immediately necessary and/or adequate medical care to their prisoners and/or at alternate medical care providers." (Doc. 1-1 at ¶ 25). Plaintiff also alleges that Defendants engaged in a "pattern of repeated delays and prison transfers." (Doc. 1-1 at ¶ 31). Because the Plaintiff does not claim the existence of a written policy, Plaintiff must demonstrate that the policy was so widespread as to constitute a

custom. *See Piotrowski*, 237 F.3d at 579. Plaintiff has not alleged facts sufficient to raise a plausible inference that either of these purported violations of Plaintiff's constitutional rights amounted to a custom or practice. For instance, Plaintiff has not claimed that any other inmates suffered from a similar practice of delays and transfers. Therefore, Plaintiff has not pleaded a plausible claim for unconstitutional polices or practices.

For substantially the same reason, Plaintiff's claims for failure to train or supervise must also fail. Plaintiff does not specify how the prison's training was inadequate. He only states that the failure to train resulted in a lack of "competent medical care providers at the prison." (Doc. 1-1 at ¶ 36). However, Plaintiff does not allege any foundational facts from which it can be plausibly inferred that Defendants provided inadequate training or supervision, or that they were aware that current training practices were likely to result in a constitutional violation. Plaintiff instead asks the Court to infer the existence of inadequate training from the unfortunate outcome in his particular case. (*See* Doc. 15 at p. 5). Without more specific allegations regarding the behavior of subordinates at the prison, the treatment of other inmates, or the training policies in place, the Court cannot simply assume that prison staff were inadequately trained.

Accordingly, Plaintiff's claims of unconstitutional policies and practices and failure to train and supervise are DISMISSED.

## B. Motion for Summary Judgment

Defendants contemporaneously filed a motion for summary judgment, seeking dismissal of Plaintiff's remaining claims. (Doc. 6).

### 1. Legal Standard

Pursuant to the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether the movant is entitled to summary judgment, the court views the facts in the light most favorable to the non-movant and draws all reasonable inferences in the non-movant's favor. *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997).

After a motion for summary judgment is filed, the non-movant "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal citations omitted). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Austin v. Kroger Tex., L.P.*, 846 F.3d 326, 328 (5th Cir. 2017) (quoting *Gates*, 537 F.3d at 417). At this stage, however, the court does not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

On the other hand, the non-movant's burden is not satisfied by some metaphysical doubt as to the material facts, or by conclusory allegations, unsubstantiated assertions, or a mere scintilla of evidence. *Little v. Liquid Air Corp.*,

37 F.3d 1069, 1075 (5th Cir. 1994) (internal quotations omitted). Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In other words, summary judgment will lie only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." *Sherman v. Hallbauer*, 455 F.2d 1236, 1241 (5th Cir. 1972).

## 2. *Statute of Limitations*

Plaintiff initiated this suit in Louisiana's Nineteenth Judicial District Court on July 25, 2016. (Doc. 1-1 at p. 14). Defendants argue that the statute of limitations has run for Plaintiff's claims that arise out of events occurring prior to July 25, 2015, because Louisiana's one-year statute of limitations applies to all claims. (Doc. 6-2 at p. 3). Plaintiff asserts that the denial of his medical care constitutes a continuing tort that tolled the running of the statute of limitations. (Doc. 16 at pp. 4–5). According to Plaintiff, the continuing tort began on May 26, 2015, when his first scheduled surgery was cancelled, and continued until either December 3, 2015, when his surgery was cancelled due to high blood pressure, or March 10, 2015, the date the surgery was completed. (*Id.* at p 4). Alternatively, Plaintiff claims that his filing of a workers' compensation claim against Louisiana Workforce, L.L.C., on March 30, 2016, interrupted the running of prescription against Defendants because under Louisiana law Defendants are solidarity liable. (*Id.* at pp. 4–5).

11

The statute of limitations for a § 1983 claim is determined by the statute of limitations for personal injuries in the forum state. *Piotrowski*, 237 F.3d at 576. In Louisiana, the statute of limitations is one year. La. Civ. Code art. 3492; *Clifford v. Gibbs*, 298 F.3d 328, 332 (5th Cir. 2002). State law also governs the tolling of the statute of limitations, unless it is inconsistent with federal law. *Bd. of Regents v. Tomanio*, 446 U.S. 478, 484 (1980). To determine when a cause of action accrues, however, the courts look to federal law. *Lavellee v. Listi*, 611 F.2d 1129, 1130 (5th Cir. 1980). An action accrues "when plaintiff knows or has reason to know of the injury which is the basis of the action." *Id.* at 1131 (quoting *Cox v. Stanton*, 529 F.2d 47, 50 (4th Cir. 1970)).

It is not entirely clear whether federal or state law applies to the continuing tort doctrine in § 1983 actions. *See Nottingham v. Richardson*, 499 F. App'x 368, 375 (5th Cir. 2012) (unpublished) ("The continuing-tort doctrine is one of accrual and thus a question of federal, rather than state, law.") (citing *Dyer v. Conoco, Inc.*, 49 F.3d 727 (5th Cir. 1995) (unpublished))); *but see Tuft v. Texas*, 410 F. App'x 770, 774 (5th Cir. 2011) (per curiam) (unpublished) (applying Texas's continuing-tort doctrine to a § 1983 claim). Under federal law, claims of deliberate indifference due to inadequate medical treatment constitute a continuing tort until the denial of medical care ceases. *See Nottingham*, 499 F. App'x at 375; *Lavellee*, 611 F.2d at 1132 ("[T]he allegation of a failure to provide needed and requested medical attention constitutes a continuing tort, which does not accrue until the date medical attention is provided."). Louisiana law defines a continuing tort as a tort "occasioned by continual unlawful acts and for

there to be a continuing tort there must be a continuing duty owed to the plaintiff and a continuing breach of that duty by the defendant." *Crump v. Sabine River Auth.*, 98-2326 (La. 6/29/99); 737 So. 2d 720, 728. For a continuing tort, "prescription dates from cessation of the wrongful conduct causing the damage." *S. Cent. Bell Tel. Co. v. Texaco, Inc.*, 418 So. 2d 531, 533 (La. 1982).

The Court concludes that Plaintiff's allegations constitute a continuing tort, which did not ceases until Plaintiff received eye surgery on March 10, 2016. *See Lavellee*, 611 F.2d at 1132. This is not a case where Plaintiff alleges a generalized failure to provide medical attention. *See Nottingham*, 499 F. App'x at 375 ("[E]ach instance of potentially deliberate indifference ceased when he received medical attention."). Instead, Plaintiff claims that a specific, necessary surgical procedure was continually denied to him. Therefore, the statute of limitations on Plaintiff's claims have not run under either Louisiana or federal law.

### 3. *Failure to Exhaust*

Defendants assert that Plaintiff's claims must be dismissed because he failed to exhaust his administrative remedies. (Doc. 6-2 at p. 4). Specifically, Defendants insist that Plaintiff failed to exhaust administrative remedies concerning the following claims: failure to train and supervise, violation of due process and equal protection, cruel and unusual punishment, deficient and unconstitutional policies and practices, negligence, gross negligence, intentional torts, and respondeat superior because Plaintiff's administrative complaints do not list these legal theories. (*Id.* at p. 4). Defendants also request that the court dismiss all claims that occurred

before the filing of Plaintiff's first administrative complaint because Plaintiff filed it improperly and never corrected the deficiencies. (*Id.* at p. 8). Finally, Defendants seek dismissal of all claims against Warden McCain and Secretary LeBlanc because they were never named in Plaintiff's administrative complaints. (*Id.* at p. 9).

The Prison Litigation Reform Act ("PLRA") mandates that inmates exhaust administrative remedies prior to filing a § 1983 claim. 42 U.S.C. § 1997e(a); *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012). The PLRA prohibits actions under § 1983 by inmates until "such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has held that "the PLRA exhaustion requirement requires *proper* exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006) (emphasis added). The purpose of the exhaustion requirement is to give an agency "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court" and to encourage the efficient resolution of claims. *Id.* at 89 (quoting *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)). "The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance." *Id.* at 95. However, an inmate, who does not have the benefit of counsel during the grievance process, "need not present legal theories in his grievances," nor "provide personal notice to a particular official that he may be sued." *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004).

In Louisiana, an inmate must follow a two-step Administrative Remedy Procedure ("ARP") process to exhaust administrative remedies before filing suit in

14

federal court. La. Admin. Code, Tit. 22, § 325. An inmate initiates the ARP process by completing a request for administrative remedy or writing a letter to the warden. *Id.* at § 325(G)(1)(a)(i). The grievance should be initiated within 90 days of the incident, unless circumstances warrant the filing of a complaint outside of that time period. *Id.* at § (G)(1). An ARP screening officer reviews the inmate's request and either accepts the request into the first step or rejects it for one of ten enumerated reasons. *Id.* at § 325(I)(1)(a)(ii). Once the request is accepted, the warden must respond on a first-step response form within forty days of receipt of the request. *Id.* at § 325(J)(1)(a)(ii). If the inmate is not satisfied with the response, he may proceed to the second-step of the ARP process by appealing to the Secretary of LDPSC using a space provided on the first-step response form. *Id.* at § 325(J)(1)(b)(i)–(ii). The Secretary must then issue a response within forty-five days of receipt by utilizing a second-step response form. *Id.* at § 325(J)(1)(b)(ii). The expiration of any response time limits entitle the inmate to move to the next step in the process. *Id.* at § 325(J)(1)(c).

Plaintiff filed two ARPs concerning the medical attention he received. (Doc. 6-3 at p. 7). In the first, ARP No. ARDC-2015-187 (hereinafter "ARP #187"), Plaintiff complained that he had not had surgery on his eye during the eight weeks he had been at EHCC. (Doc. 6-3 at p. 7). ARP #187 also addressed EHCC's failure to provide clean jumpsuits and living conditions. (*Id.*). Additionally, it contained complaints regarding a guard's failure to honor Plaintiff's duty status and a request to be sent back to work release. (*Id.*). In accordance with Louisiana policy, ARP #187 was

rejected on July 13, 2015, for addressing more than one issue. (Doc. 6-3 at p. 6); La.

Admin. Code, Tit. 22, § 325(I)(1)(a)(ii)(g). Plaintiff did not refile.

The second ARP, RCC-2016-88 (hereinafter ARP #88), dated February 1, 2016,

addressed the cancellation of Plaintiff's surgery on December 3, 2015. (Doc. 8-2 at p.

14). Plaintiff's first step was denied on February 5, 2016, and his second step was

denied on April 22, 2016. (*Id.* at pp. 3–4). In ARP #88, Plaintiff complained about

the cancellation of his surgery on December 3, 2015 and the fact that he had not been

taken back for surgery since that time. (*Id.* at p. 14). Plaintiff also protested LDPSC

shipping him to various housing facilities without providing surgery. (*Id.*).

Defendants' first argument regarding exhaustion—that Plaintiff's ARPs failed

to assert the legal theories on which he later sued—is unavailing. Neither the PLRA

nor the ARP requires that Plaintiff set forth the precise legal theory underlying his

claim. *See Johnson*, 385 F.3d at 522. All of Plaintiff's claims stem from the same set

of facts: that Plaintiff was allegedly denied necessary medical care, which his ARPs

addressed. Therefore, Defendants received "'fair notice' of the problem that will form

the basis of the prisoner's suit." *Id.* at 516.

However, Defendants are correct that ARP #187 failed to exhaust Plaintiff's

administrative remedies. *See Abbott v. Babin*, 587 F. App'x 116, 118–19 (5th Cir.

2014) (unpublished) (per curiam) (upholding dismissal without prejudice of an

inmate's ARP for containing multiple issues). Therefore, Plaintiff failed to exhaust

administrative remedies concerning actions that took place in EHCC.[8] *See* La. Admin Code Tit. 22, § 325(G)(1).

Defendants admit that Plaintiff exhausted his administrative remedies with ARP #88. Nonetheless, Defendants assert that because Warden McCain and Secretary Leblanc are not listed in ARP #88, the claims against them should be dismissed. Although "[n]othing in the PLRA requires prisoners to identify all defendants that they later sue," *Patterson v. Stanley*, 547 F. App'x 510, 511–12 (5th Cir. 2013) (unpublished) (per curiam) (citing *Jones v. Bock*, 549 U.S. 199, 217 (2007)), a prisoner should provide enough information to give fair notice of a complaint against a prison official. *See Johnson*, 385 F.3d at 517. The Court finds that ARP #88 sufficiently placed Warden McCain and Secretary Leblanc on notice. ARP #88 complains about LDPSC's role in delaying his surgery. (Doc. 8-2 at p. 14). He argues that LDPSC has demonstrated deliberate indifference by failing to reschedule his surgery. (*Id.*). Under these circumstances, Warden McCain and Secretary LeBlanc should have been sufficiently placed on notice that Plaintiff may have a complaint against them.

Because Plaintiff did not exhaust his administrative remedies with respect to events that occurred at EHCC, Plaintiff's claims against Warden Tanner are DISMISSED.

---

[8] The Fifth Circuit has allowed a Plaintiff to refile an ARP rejected for improper form outside the 90-day filing window when the initial ARP, though improper, was filed within the 90-day window. *See Abbott v. Babin*, 587 F. App'x at 119. Additionally, tolling of a claim's statute of limitations occurs "during the pendency of this action and any additional state administrative proceedings." *Wright v. Hollingsworth*, 260 F.3d 357, 359 (5th Cir. 2001).

17

## 4. Qualified Immunity

Warden McCain and Secretary Leblanc argue that they are entitled to qualified immunity. (Doc. 6-2 at pp. 15–18). The doctrine of qualified immunity shields "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (internal quotations omitted); *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). When pleaded in a motion for summary judgment, qualified immunity shifts the burden from the defendant to the plaintiff to establish, by competent evidence, that there is a genuine dispute of material fact with respect to whether (1) the official violated an actual statutory or constitutional right and (2) the official's actions were objectively unreasonable in light of clearly established law at the time of the conduct in question. *Pearson*, 555 U.S. at 232; *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012). The Court may address these prongs in either order. *See Pearson*, 555 U.S. at 236. Even when construing all facts and drawing all reasonable inferences in a light most favorable to the non-moving party, qualified immunity immunizes "all but the plainly incompetent or those who knowingly violate the law." *Poole*, 691 F.3d at 627.

Although Plaintiff asserts numerous constitutional complaints, the gravamen of all of Plaintiff's federal claims against Warden McCain and Secretary Leblanc is that they were deliberately indifferent to Plaintiff's serious medical needs. *See Wilson v. Seiter*, 501 U.S. 294, 303 (1991) (holding that the deliberate indifference

standard applies to Eighth Amendment challenges in which a prisoner alleges "inhumane conditions of confinement, failure to attend to his medical needs, or a combination of both"); *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995).

To succeed, Plaintiff must raise a genuine dispute of material fact concerning whether Defendants acted with deliberate indifference to his medical needs. An official acts with deliberate indifference when he "consciously disregard[s] a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 839 (1994) (internal quotations and citations omitted). Deliberate indifference requires Plaintiff to establish (1) that the officer was aware of facts from which a substantial risk of serious harm could have been inferred and (2) that the officer actually drew the inference. *Ball*, 792 F.3d at 594. "Under exceptional circumstances, a prison official's knowledge of a substantial risk of harm may be inferred by the obviousness of the substantial risk." *Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999) (internal quotations and citations omitted). However, deliberate indifference presents, for the plaintiff, "an extremely high standard to meet." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (internal quotations omitted).

Here, the record provides no evidence that Warden McCain and Secretary Leblanc acted with deliberate indifference. There is no evidence showing that they refused to treat Plaintiff, ignored his complaints, intentionally treated him incorrectly, or engaged in similar conduct that would show a wanton disregard for Plaintiff's serous medical needs. *See Grumbles v. Livingston*, ___ F. App'x ___ No. 16-20321, 2017 WL 3772793, at *1 (5th Cir. Aug. 30, 2017).

In fact, "[t]he record shows extensive medical treatment" of the Plaintiff while incarcerated." *Gobert v. Caldwell*, 463 F.3d 339, 351 (5th Cir. 2006). Although Plaintiff's scheduled surgery on May 27, 2015 was cancelled, State Defendants took numerous steps to provide medical care and to reschedule the surgery. Plaintiff's intake form at EHCC noted the need for surgery and his eye drop prescriptions were filled. (Doc. 11-1 at. pp. 6–7). Plaintiff was transported to ILH's eye clinic twice in June, 2015. (Doc. 11-1 at p. 21; Doc.11-2 at p. 22). That surgery was cancelled because of an EKG the prison performed that indicated potential cardiac issues. (Doc. 11-2 at p. 23). Plaintiff was then seen by a cardiologist and was cleared for surgery on July 23, 2015. (Doc. 11-3 at pp. 4–5). Once Plaintiff was transferred to RCC, the prison quickly checked on the status of his surgery and consulted with outside doctors on multiple occasions about Plaintiff's eye injury. (Doc. 7-3 at pp. 10, 12–16; Doc. 11-3 at p. 21; Doc. 11-5 at p. 12). Plaintiff's medical records show that his surgery scheduled for December 3, 2015, was cancelled not because of any decision by Defendants, but due to Plaintiff's high blood pressure. (Doc. 7-3 at p. 16; Doc. 11-5 at p. 25). However, Plaintiff received medication for his blood pressure and was quickly cleared for surgery again. (Doc. 11-6 at p. 3). LDPSC notified the hospital to reschedule the surgery on January 11, 2016, (Doc. 7-3 at p. 17), although the surgery did not take place until March 10, 2016. (Doc. 11-8.at pp. 3, 10). Even if the Court were persuaded that some of the delays were attributable to inattentive and neglectful conduct, negligence cannot support a finding of deliberate indifference. *See Gobert*, 463 F.3d at 352.

Moreover, Plaintiff has provided no competent summary judgment evidence that either Warden McCain or Secretary Leblanc were personally involved in or aware of the decisions concerning Plaintiff's medical treatment and transfers. *See Thompkins*, 828 F.3d at 304 ("[S]upervisory officials are not liable [under § 1983] for the actions of subordinates on any theory of vicarious liability."). For these reasons, Warden McCain and Secretary Tanner are entitled to qualified immunity.

Therefore, Plaintiff's 42 U.S.C. § 1983 claims against Warden McCain and Secretary LeBlanc are Dismissed.

### 5. *State Law Claims*

Plaintiff raises numerous state law claims against Defendants. However, the Court declines to exercise supplemental jurisdiction over the remaining state-law claims available to Plaintiff. The Court's jurisdiction over state law claims is discretionary if all federal claims have been dismissed. *See* 28 U.S.C. § 1367(c)(3) Further, when all federal claims are dismissed or otherwise eliminated from a case prior to trial, the general rule is to decline to exercise jurisdiction over the pendent state law claims. *Wong v. Stripling*, 881 F.2d 200, 204 (5th Cir. 1989).

For these reasons, Plaintiff's state law tort claims are DISMISSED WITHOUT PREJUDICE.

III.   CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendants' Motion to Dismiss (Doc. 5) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment (Doc. 6) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's claims against Warden Tanner, Warden McCain, and Secretary Leblanc in their official capacities are **DISMISSED**.

**IT IS FURTHER ORDERD** that Plaintiff's claims against LDPSC are **DISMISSED**.

**IT IS FURTHER ORDERED** that Plaintiff's unconstitutional policies and procedures claims and failure to train and supervise claims against Warden Tanner, Warden McCain, and Secretary Leblanc are **DISMISSED**.

**IT IS FURTHER ORDERED** that Plaintiff's 42 U.S.C. § 1983 claims against Warden Tanner in his individual capacity are **DISMISSED**.

**IT IS FURTHER ORDERED** that Plaintiff's § 1983 claims against Warden McCain in his individual capacity are **DISMISSED** with **PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiff's § 1983 claims against Secretary LeBlanc in his individual capacity are **DISMISSED** with **PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiff's state law claims against Warden Tanner, Warden McCain, and Secretary LeBlanc are **DISMISSED WITHOUT PREJUDICE**.

Baton Rouge, Louisiana, this _28th_ day of September, 2017.

_____

**BRIAN A. JACKSON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**